GOZA *et al. v.* STEELE, administrator.

1. Where it was provided in a will, which created a life-estate in certain lands in favor of the wife and two daughters of the testator, that the survivor of the life-tenants "may let the land be sold" and use the proceeds for her support, and the survivor, after the death of the other two life-tenants, sold the land and conveyed it to a purchaser in consideration of the agreement on the part of the latter that he would support her during the balance of her life, and this consideration appears to have been fully equal in value to the value of the land, a court of

7

equity, as against the administrator cum testamento annexo of the deceased testator, will decree the title to the land to be in the purchaser.

2. The demurrer on the ground of misjoinder of parties should not have been sustained.

No. 4035. APRIL 19, 1924.

Equitable petition. Before Judge Hutcheson. DeKalb superior court. October 15, 1923.

Aaron Goza, a resident of DeKalb County, Georgia, died in the month of July, 1869, leaving a will which was duly probated. By its terms he left 170 acres of land to his wife, Elizabeth, and two single daughters, Lee Ann and M. E., the last named being Molly E. Goza, one of the original plaintiffs in the case at bar. This land was left to said devisees as a home during their lives, and was not to be sold under any condition as long as any two of the three devisees were in life; and upon the death of either two of these devisees, the survivor, if she for obvious reasons did not care to live on said land, could let the land be sold and live off of the proceeds derived from the sale. The items of the will relating to the sale of the land and the disposition of the proceeds are numbered 3 and 6, and are set forth and dealt with hereafter in the opinion. The widow and the two daughters, Lee Ann and Molly E., accepted the terms of the will. The widow died a few years after the death of the testator. The two daughters continued to live on the property alone and until 1896. There were only eight acres of cultivatable land on the entire tract; and as the rents from this land were the only source of revenue they had, the two spinsters, both now elderly women, were in destitute circumstances. In the year 1896 Lee Ann became ill, and all of Molly E. Goza's time was taken up in nursing and caring for her sister, and hence Molly E. was without the means of a livelihood. She induced Hal C. Goza to come and live with her on the land and tend it for their mutual support. Lee Ann died in the latter part of 1896, and thus Molly E. became the sole survivor of the three devisees. Hal C. Goza and Molly E. Goza remained on said land during the year 1897. In 1898 Hal C., having married, notified Molly E. that he could not remain on said land and support her, on account of the fact that there were only a few acres of cultivatable land on the tract, and that the dwelling thereon was so dilapidated that it was unhealthy and uninhabitable, and that he would have to move away from the place. Molly

E., the sole surviving devisee, then persuaded Hal C. to accept from her a deed to one hundred acres of the land, in consideration of his contracting with her to support her for the remainder of her life, both parties being under the misapprehension that the will conveyed an indefeasible fee in the land to Molly E. Goza, and, acting upon this mutual mistake, Hal C. Goza accepted a warranty deed from Molly E. Goza and took the latter into his home and away from the land in question, and went into possession of the 100 acres of land in his own right. This 100 acres at this time, 1898, was not worth more than $500 or $600. Hal C. faithfully kept his contract and tenderly cared for Molly E., who became an inmate of his home. At an expense of several hundred dollars and much labor he cleared a two-horse farm on the 100 acres, built two dwellings thereon, gave in and paid the taxes on the entire tract of land, and continued to care for the aged Molly E. Goza. In 1921 Molly E. and Hal C. sought and consulted counsel as to the legality of the deed from Molly E. to Hal C., and, being informed that there was a serious question as to whether the deed could and did convey more than a life-estate, went to Steele as administrator of the estate of Aaron Goza, and explained to him the facts hereinbefore set forth; and Molly E. requested and demanded of the administrator that he prevent a legal fraud from being perpetrated upon Hal C. by taking such action as might be necessary to have the title to the 100 acres of land decreed and vested in Hal C. Goza, or else sell the property and account to Hal C. in a just and equitable amount for his support and maintenance of Molly E. in the past, and compensate him in a just and equitable sum for her future support, from time to time, as long as she should live, in accordance with the terms, provisions, and clear intent of the testator, Hal C. offering at the time to quitclaim the 100 acres to the administrator to avoid any cloud on the title to said property and facilitate the sale thereof. The administrator refused to comply with the request, denied indebtedness in any sum to Hal C. Goza, and declined to sell the land or any part thereof for the future support of Molly E. Goza. Thereupon the plaintiffs filed their petition setting forth the above-stated facts, and praying for such relief as a court of equity, in the exercise of its discretion, might deem proper, and for a construction of the will. Molly E. Goza died in 1922, Hal C. having continued to support and maintain

her under his contract as long as she lived. Upon her death an administrator of her estate was appointed, who applied to be made a party plaintiff in this cause, and was so made. a party by the court. Thereafter a general demurrer of the defendant was sustained, and the petition was dismissed by the court, and the case is presented to the Supreme Court for review.

*Paul L. Lindsay,* for plaintiffs.

*L. J. Steele,* for defendant.

BECK, P. J. (After stating the foregoing facts.) The court should not have dismissed this case on general demurrer, but should have retained the petition for the purpose of administering, in part at least, the equitable relief sought; for there is equity in the petition. One ground of the demurrer was that "If plaintiffs have any remedy, it is one for a court of law, and not for a court of equity." It seems to us otherwise, and that this case is one peculiarly for the exercise of equity jurisdiction. There are many items of the will which it is not necessary for us to construe or consider; but items 3 and 6 must be considered, construed, and ruled upon. Item 3 is as follows: "I give, bequeath, and devise to my beloved wife Elizabeth, and my two single daughters Leannah and M. E. Goza, one hundred and seventy acres of land, the same being a part of lot number two hundred and sixty-two in the eighteenth district of originally Henry but now DeKalb County. I desire the land above named to be held by the three persons above named during their natural lives or as long as any one of them may live, to be held by them for a home and for a support for them; and in case they cannot agree among themselves as to renting and cultivating, then it shall be the duty of the executor who may be appointed to rent it out and have it cultivated to the best advantage that he can for them; and at their death the land to be sold, or at the death of any two of them, the third one, still being alive, may let the land be sold and she may live off the money or proceeds of the land as long as she may live. This is to be done in case the third one does not wish to live on the place by herself; and at the death of all three of the above-named persons, if there is as much as twenty-five dollars left, I desire it to go to my deceased son Ferdinand's children who now reside in Alabama; and if there should be anything left after paying Ferdinand's children twenty-five dollars, I desire that my

deceased son John's children have the sum of five dollars divided among them, and also my daughter Sarah have the sum of five dollars out of the above-named proceeds, and also my daughter Emiline to have the sum of five dollars out of the same." In this item the testator created a life-estate in favor of his wife and two daughters. The term of this estate was for and during the life of the one dying last. It made provision for the renting of this estate by the executor, in a certain contingency stated, which never seems to have arisen. It further provided that after the death of any two of the life-tenants the third, the survivor, might "let the land be sold" and live off of the proceeds. In our statute law we are enjoined, in the consideration of all wills and legacies bequeathed, to seek diligently for the intention of the testator and give effect to the same as far as may be consistent with the rules of law; and we are to look to all the provisions of the will to arrive at that intention. It seems to us that the testator intended that when two of the life-tenants were dead the survivor should let the land be sold; and this expression "let the land be sold" may well be construed "have the land sold," or sell it herself. It does not say the executor shall sell this land, but that the survivor may let the land be sold. She was made the judge of the necessity for selling the land or the propriety of making this disposition of it. It may have been in the testator's mind that as these life-tenants were women and inexperienced in business affairs, the land should be sold by the executor or by some agent selected by the survivor. But we do not think, under the power here given, where the survivor of the life-tenant herself actually sold the land when the necessity for selling it arose, and the deed executed by her was accepted by the purchaser and the consideration paid, which was full and fair, and, as it turned out, in excess of the value of the land, that the transaction should be declared to be void. The purchaser of this land from the survivor has invested several thousand dollars in improvements on the land he bought. The survivor was an aged lady at the time she sold the land, but she continued to live through many years, and died at the age of 90. Through all these years the purchaser of the land from the survivor cared and provided for her, furnished her with a livelihood and comforts, medicine, and medical attendants; performed all that was to be performed on his part as a consideration for the

deed; and when it was discovered that possibly there was a legal defect in the conveyance, the aged maiden lady who had conveyed the property to the petitioner joined with him in a petition to a court of equity to have the title to the property decreed in petitioner; and that, we think, should have been heard. When the survivor of the three life-tenants, the aged Miss Goza, sold the land directly, she was carrying out the intentions of the testator as expressed in the item of the will quoted above. The testator evidently contemplated that the proceeds of the land might be entirely consumed in supporting the survivor of the life-tenants, because he made this provision: after providing that she "may let the land be sold," he provides further, that she may live off of the money or proceeds of the land as long as she may live. This is to be done in case the survivor does not wish to live on the place by herself; "and at the death of all three of the above-named persons, if there is as much as twenty-five dollars left," it was to go to certain nephews or nieces; and if anything should be left after paying the legacy of $25, the desire of the testator was that the sum of $5 should be divided among other nephews and nieces. These last small legacies plainly show that the testator had it in his mind that the proceeds would necessarily be consumed.

In item 6 of the will we find the following: "After due reflection I desire to make some changes in the third article in relation to the disposal of the property left to my wife Elizabeth and my two daughters Leannah and M. E. Goza after their death. 1st. I desire that after paying my deceased son Ferdinand's children twenty-five dollars, I desire that my deceased son John's children have the sum of five dollars paid to them, and the balance, if there should be any, I desire that to be equally divided among all my children except my deceased son John's children. I desire that they do not have any more besides the five dollars heretofore set apart for them." Here again it appears that the testator had the intention that the proceeds of the sale of the land should be for the support of the life-tenants, and only in case there was a remainder after effectuating that purpose should anything be given to any of the other legatees. This will was executed in 1869, and the testator died a month or two after its execution. The survivor of the life-tenants lived for more than a half century after the death of her father; and that the entire proceeds of

the sale of the 100 acres of the 170 acres in which the life-estate was created was consumed, is not surprising, and is in no way contrary to the intention of the testator as it appears from the entire will. The petition sets forth a good cause of action against a general demurrer.

Miss Goza was a proper party plaintiff in the petition brought by Hal Goza, the purchaser, and the suit was properly brought against the administrator cum testamento annexo of the testator, who was maintaining that the title to the land was in the estate after the death of the last of the life-tenants.

We do not think that the estate of the testator would be liable for any demands upon it for the support of the life-tenant. And in so far as certain items seek to set up a claim against the administrator cum testamento annexo of the testator for the support and maintenance of Miss Goza, they should be stricken.

*Judgment reversed. All the Justices concur.*